PER CURIAM.
Appellants, the Libertarian Party of Florida, its executive committee, and a Libertarian candidate for the Florida House of Representatives, seek reversal of a final judgment ruling against their complaint for declaratory and injunctive relief which challenged the constitutionality of section 99.103, Florida Statutes (1993). The challenged statute excludes political parties with less than 5 percent of total registered voters — i.e., “minor political parties” — from receiving partial rebates of their candidates’ filing fees.[1] It is undisputed that were it not for the Libertarian Party’s status as a minor party, the challenged statute would entitle its executive committee to a rebate of approximately half of its candidates’ filing fees. The appellants claim that the statute violates the Equal Protection Clause because it is a discriminatory classification that unfairly burdens their fundamental First and Fourteenth Amendment right to associate politically by placing minor parties and their candidates at a competitive disadvantage vis-a-vis the two major parties.[2] We reject appellants’ contention, and affirm.
*1121 The statute under attack is subject to a flexible standard of scrutiny which ranges from strict scrutiny to a rational basis analysis, depending on the circumstances. Fulani v. Krivanek, 973 F.2d 1539, 1543 (11th Cir.1992). In our inquiry we must weigh the character and magnitude of the asserted injury to the plaintiffs’ First and Fourteenth Amendment rights against the precise interests advanced by the state in support of the statute, taking into consideration the extent to which those interests make it necessary to burden the plaintiffs’ rights. Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983); see Fulani v. Smith, 640 So.2d 1188 (Fla. 1st DCA 1994), rev. denied, 651 So.2d 1193 (Fla.1995). The rigorousness of our inquiry depends upon the extent to which the challenged statute burdens First and Fourteenth Amendment rights; severe restrictions must be narrowly tailored to advance compelling interests, while “reasonable, nondiscriminatory restrictions” need only advance important regulatory interests. Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059, 2063-64, 119 L.Ed.2d 245 (1992) (quoting Anderson, supra, 460 U.S. at 788, 103 S.Ct. at 1570).
The challenged statute is not a ballot access provision that ordinarily implicates substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments. See Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979); McLaughlin v. North Carolina Bd. of Elections, 65 F.3d 1215, 1221 (4th Cir.1995). Rather, § 99.103 is merely an appropriation of some portion of the filing fees that both sides concede are lawfully collected from candidates for office. The rigidity of our examination is lessened where, as here, we move further away from impacting voting and associational rights. Consequently, we must determine whether the rule set forth in § 99.103 is reasonably related to an important state interest.[3]
The state interest asserted to support the statute is a desire to strengthen and encourage major parties as a means of preventing factionalism and a multiplicity of splinter parties. Such an interest has been deemed important. See Burdick, supra, 504 U.S., at 439, 112 S.Ct., at 2066; Wetherington v. Adams, 309 F.Supp. 318, 321 (N.D.Fla. 1970); Boudreau v. Winchester, 642 So.2d 1, 3 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1192 (Fla.1995). In Storer v. Brown, 415 U.S. 724, 736, 94 S.Ct. 1274, 1282, 39 L.Ed.2d *1122 714 (1974), the Supreme Court declared that this interest was “not only permissible, but compelling.”
As to whether § 99.103 is reasonably related to the state’s interest, the appellants argue that once the minor party candidate qualified to be on the ballot by obtaining the petition signatures of the required number of registered voters, all concerns about factionalism and splinter parties should have been satisfied. It is probably true that the interest in preventing factionalism is best effectuated by petition requirements and other limitations on ballot access.[4] This does not mean, however, that the interest cannot also be advanced by limited rebates of major party candidates’ filing fees to their respective parties’ executive committees “for the purpose of meeting ... expenses.” § 99.103(1), Fla.Stat. (1993). The appellants may have shown that the statute is not necessary or essential to the state’s interest, but we are only concerned with whether the statute is reasonably related to the interest asserted. Because we believe it is so related, we reject appellants’ attack and uphold the challenged provision.
Accordingly, the judgment is AFFIRMED.
MINER and WEBSTER, JJ., concur.
BOOTH, J., dissents with written opinion.

. A party with less than 5 percent of Florida's total registered voters is elsewhere defined as a "minor political party.” See § 97.021(15), Fla. Stat. (1993).

. The appellants have also invoked the rights of political association and participation in article I, sections 1 and 5 of the Florida Constitution. Because they fail to cite authority indicating that their Florida rights are more extensive than those provided under the U.S. Constitution, and we are aware of no separate analysis applicable to the challenged statute under our state constitution, we agree with the trial court's ultimate assessment of these claims: "Since it passes muster under the U.S. Constitution, § 99.103 also passes muster under the Florida Constitution.”

. We are not persuaded by the appellants' contention that we must apply strict scrutiny because the statute discriminates against minor parties. The appellants cited Libertarian Party of Indiana v. Marion County, 778 F.Supp. 1458 (S.D.Ind.1991), in support of strict scrutiny. There, the court struck down a provision in the state election law allowing major parties to obtain free copies of voter registration lists while minor parties had to obtain the lists at their own expense. Although the court considered whether a stricter standard of review should be used to judge “discriminatory” statutes, the question was not decided. The state’s failure to present any important interest to support its rule meant that the statute must fall under either standard. Even if the court had opted for strict scrutiny, the case would be distinguishable given the court’s finding that restricting access to voter registration lists impinged upon associational rights.
We are aware that in Burdick and Anderson the Court noted that lessened scrutiny would apply to "reasonable, nondiscriminatory restrictions.” However, we do not agree with the appellants’ suggestion that this language mandates strict scrutiny whenever a "discriminatory" provision is challenged on equal protection grounds, regardless of the degree to which a party’s First and Fourteenth Amendment rights are implicated. Equal protection was not implicated in Burdick or Anderson, and it would make little sense in the context of an equal protection challenge to impose strict scrutiny whenever some aspect of a challenged election law could be described as discriminatory. This would be tantamount to imposing strict scrutiny in all such cases, since some form of discriminatory classification is the impetus for any equal protection challenge. Of course, an equal protection analysis only begins with a finding that the challenged provision contains a discriminatory classification; it then remains to be determined whether the classification or "discrimination” is supported by a sufficiently important state interest, and whether and to what extent the provision is necessary to advance that interest. We thus conclude that where equal protection is raised, the reference to "reasonable, nondiscriminatory restrictions” must mean that lessened scrutiny will be applied to statutes that do not have substantial discriminatory impact upon voting, associational and expressive rights protected by the First and Fourteenth Amendments.

. We have rejected the Libertarian Party's challenge to the constitutionality of the 3 percent petition requirement in section 99.096(2), Florida Statutes (1993). See Libertarian Party of Florida v. Smith, 660 So.2d 807 (Fla. 1st DCA 1995).